UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| D. RICKY RICHARDSON, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>DEPARTMENT OF JUSTICE )<br>BUREAU OF PRISONS, )<br>)<br>HARLEY LAPPEN, DIRECTOR, )<br>and )<br>)<br>DAVID L. WINN, WARDEN, )<br>)<br>Respondents. ) | Civil Action No. 04CV40099EFH |

## MEMORANDUM OF LAW IN SUPPORT OF RESPONDENTS' MOTION TO DISMISS HABEAS PETITION PURSUANT TO FED. R. CIV. P. 12(b)

### Introduction

Petitioner, D. Ricky Richardson, commenced the instant action on or about May 28, 2004, by filing a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2241, against the Department of Justice Federal Bureau of Prisons ("BOP"), Harley Lappen, Director of the Federal Medical Center, Devens, Massachusetts, ("FMC Devens"), and David L. Winn, Warden of FMC Devens (collectively "Respondents"), with the United States District Court for the District of Massachusetts.  Petitioner seeks a writ directing Respondents to calculate his Good Conduct Time ("GCT") credits in accordance with 18 U.S.C. § 3624(b), and to apply the pre-December 2002 criteria such that he may be designated for immediate placement in a Community Corrections Center ("CCC").  (See Petition, pp. 2-3.)  Petitioner contends that as a result of the BOP's GCT calculation policy he has been denied eight days GCT credit on his sentence.  (Id. at p. 2.)  Petitioner further alleges that he is qualified to serve six months in a

CCC and has only been granted two.  (Id.)

As a result of Petitioner's failure to exhaust administrative remedies, failure to adequately allege justiciable claims, and lack of subject matter jurisdiction, Respondents move this Court to dismiss Petitioner's complaint in its entirety, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## Statement of Facts[1]

Petitioner, D. Ricky Richardson, Reg. No. 17761-038, a federal inmate, is currently incarcerated at FMC Devens.  (See Petition, p. 1.)  On November 12, 2002, after being found guilty of:  one count of possession of counterfeit checks, a violation of 18 U.S.C. § 513(a); four counts of possession of a fictitious check, a violation of § 514(a); and one count of conspiracy to utter counterfeit securities and false and fictitious instruments, a violation of § 371, Petitioner was sentenced to a 23-month term of incarceration with a five-year term of supervised release to follow.  (See **Attachment A** - Public Information Data concerning Petitioner, attached to **Exhibit 1** - Declaration of FMC Devens Paralegal Trainee Stephanie Scannell ("Scannell Decl.").[2]  Petitioner reported to FMC Devens on February 20, 2003, at which time he

---

[1] For the purposes of a Rule 12 motion to dismiss, a court accepts that all factual allegations set forth in the complaint are true.  See Williams v. City of Boston, 784 F.2d 430, 433 (1st Cir. 1986); Mulloy v. United States, 884 F. Supp. 622, 626 (D. Mass. 1995).  However, when a court is faced with a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), it is the party asserting jurisdiction who has the burden of establishing that jurisdiction exists.  O'Toole v. Arlington Trust Co., 681 F.2d 94, 98 (1st Cir. 1982).  In the instant case, even accepting as true all of Petitioner's allegations of fact, this Court should dismiss the petition in its entirety for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), and for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6).

[2] This declaration and the attachments thereto are provided in support of Respondents' arguments in favor of dismissing Petitioner's claims for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and 12(h)(3).  The attachment of this additional material does not transform this motion from a Rule 12 motion to dismiss to a Rule 56 motion for summary judgment.  See Gonzalez v. United States, et al., 284 F.3d 281, 287 (1st Cir. 2002).  "[I]t is clear that the facts relevant to the determination of subject matter jurisdiction do not go directly to the merits of the Petitioner's claim."  Id.; see also Heinrich v. Sweet, 44 F. Supp. 2d 408, 412 (D. Mass. 1999), citing Jones-Booker v. United States, 16 F. Supp. 2d 52, 58 (D. Mass. 1998) ("[A] court ordinarily may not consider materials

commenced serving his 23 month sentence. (Id.)

Pursuant to the BOP's established practice concerning the calculation of GCT credits, the agency has determined that Petitioner will be entitled to 90 days of GCT credited against his sentence, assuming good behavior, such that his projected release date is October 2, 2004.[3] (See **Exhibit 1, Attachment C** - Sentence Monitoring Good Time Data for Petitioner.)

The BOP has also determined, in accordance with a new practice established in December 2002, that Petitioner will be eligible for placement in a CCC (or halfway house) for the last ten percent of his sentence, beginning August 3, 2004. Petitioner alleges that the BOP has incorrectly determined his GCT credits and that a correct calculation should yield 102.6 days of GCT. Further, he alleges that the December 2002 change in practice concerning CCC placement is unlawful, and that he is entitled to be considered for a six-month CCC placement.

On October 17, 2003, Petitioner submitted an Inmate Request to Staff (Form BP-S148.055), thus initiating his pursuit of administrative remedies. He has not however, exhausted his administrative remedies. (See **Exhibit 1, Attachment D** - Petitioner's October 17, 2003, Inmate Request to Staff, and agency's Response thereto, dated October 20, 2003.)

---

outside the pleadings on a Rule 12(b)(6) motion . . . but may consider such evidence on a Rule 12(b)(1) motion . . . ."); White v. Comm'r of Internal Revenue, 899 F. Supp. 767, 771 (D. Mass. 1995) ("A court is not bound by the allegations in the pleadings when considering motions to dismiss for lack of subject matter jurisdiction brought under Rule 12(b)(1)").

[3] For the purpose of calculating his GCT credits, February 1, 2003 is used as his start date. (See **Exhibit 1, Attachment C** - Sentence Monitoring Computation Data for Petitioner.) Petitioner received prior jail credit of nineteen days, which was subtracted from the February 20, 2003, date, hence, February 1. Id. In the event that all of his remaining GCT is disallowed, Petitioner's full-term expiration date is December 31, 2004. Id. The BOP's determination of Petitioner's GCT credits, assuming good behavior, is set forth in **Attachment A**.

## Statutory and Regulatory Framework

### 18 U.S.C. § 3624(b): Good Conduct Time

In this case, the first relevant statute, 18 U.S.C. § 3624(b), provides in pertinent part:

> **Credit toward service of sentence for satisfactory behavior**.--
> (1) [A] prisoner who is serving a term of imprisonment of more than 1 year . . . **may** receive credit toward the service of the prisoner's sentence, beyond the time served, of **up to** 54 days at the end of each year of the prisoner's **term of imprisonment**, beginning at the end of the first year of the term, **subject to** determination by the bureau of Prisons that, during the year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations.

(emphasis added). The meaning of the phrase "term of imprisonment," as used in this section continues to be the source of some debate and is at issue in this case.

### BOP Regulation 28 C.F.R. § 523.20

The BOP promulgated its interpretation of the 18 U.S.C. § 3624(b) provision for good conduct time, 28 C.F.R. § 523.20, through notice and comment procedures. Section § 523.20 states in pertinent part: "Pursuant to 18 U.S.C. 3624(b), . . . an inmate earns 54 days credit toward service of sentence (GCT credit) **for each year served**." (emphasis added).

### 18 U.S.C. § 3624(c): Pre-Release Custody

The second relevant statute at issue in this case is 18 U.S.C. § 3624(c) which provides in pertinent part:

> **Pre-release custody.** The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends **a reasonable part**, not to exceed six months, **of the last 10 per centum of the term to be served** under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement.

(emphasis added). Section 3624(c) thus sets an unambiguous limit on the amount of time that a prisoner may spend in a CCC at the end of his "term of imprisonment"– the last ten percent of

the sentence, not to exceed six months.

## 18 U.S.C. § 3621(b): Place of Imprisonment

The third and final relevant statute, 18 U.S.C. § 3621(b), provides for the imprisonment of a convicted person. The relevant portion at issue states:

> **(b) Place of imprisonment.**--The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau . . . that the Bureau determines to be appropriate and suitable . . . ."

**Argument**

I.   **THE BOP'S CALCULATION OF PETITIONER'S GOOD CONDUCT TIME IS CORRECT PURSUANT TO 18 U.S.C. § 3624(b)[4]**

   A.   **A Plain Reading of § 3624(b) Supports the BOP's Approach For Determining GCT Credit.**

In conflict with the findings of several courts, Petitioner alleges that the BOP's failure to grant GCT credits based on his imposed sentence is contrary to § 3624(b).[5] Petitioner alleges

---

[4] The Petitioner's claim that the BOP has improperly calculated his GCT credits should be dismissed under the traditional requirement that a prisoner must exhaust his administrative remedies before applying for habeas relief under 28 U.S.C. § 2241. E.g., Rogers v. United States, 180 F.3d 349, 357-58 (1st Cir. 1999); Moscato v. Federal Bureau of Prisons, 98 F.3d 757 (3d Cir. 1996); Gonzalez v. Perrill, 919 F.2d 1 (2d Cir. 1990); United States v. Flanagan, 868 F.2d 1544, 1546-47 (11th Cir. 1989). Similarly, the Petitioner's challenge to the BOP policy regarding CCC placement, which is in effect a challenge to the conditions of his confinement, is subject to the strict statutory exhaustion requirement of 42 U.S.C. § 1997e(a). See Booth v. Churner, 532 U.S. 731, 741 n.6 (2001) ("we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise"). Where, as here, an inmate fails to exhaust available administrative remedies, the Court lacks subject matter jurisdiction over his civil action and it should be dismissed. Jenkins v. Haubert, 179 F.3d 19, 28-29 (2d Cir. 1999); see, e.g., United States v. Flanagan, 868 F.2d 1544, 1546-47 (11th Cir. 1989) (prisoner's claim that his pre-sentence custody should have been credited against his sentence was not properly before the court because prisoner failed to exhaust administrative remedies available through federal prison system prior to seeking judicial review). As Petitioner has failed to exhaust available administrative remedies and the futility exception has not been established, his claim should be dismissed for lack of subject matter jurisdiction.

[5] Courts that have upheld the BOP's approach to GCT credit determinations include: Pacheco-Camacho v. Hood, 272 F.3d 1266, 1266 (9th Cir. 2001); cert denied 535 U.S. 1105, (2002); Pasciuti v. Drew, 2004 WL 1247813 *1 (N.D.N.Y. June 2, 2004); Martinez v. Wendt, 2003 WL 22456808 *1 (N.D.Tex. Oct. 24, 2003) (Mag. Report and Recommendation), adopted by the district court 2003 WL 22724755 (N.D.Tex. 2003); Brown v. Hemingway, 53 Fed. Appx. 338 (6th Cir. Dec. 16, 2002)(unpublished decision); Williams v. Lamanna, 20 Fed. Appx. 360, 2001 WL 1136069 (6th Cir. Sept. 19, 2001) (unpublished decision); Webb v. Deboo, et al., Case No.

5

that, under the statute, he is entitled to 102.6 days of GCT, whereas, under the BOP's interpretation of the statute he receives 90 days. Petitioner's assertion is incorrect.

The application of the statute and BOP regulation is explained in a BOP internal guideline, Program Statement 5880.28, Sentence Computation Manual CCCA ("PS 5880.28" or "Program Statement 5880.28"). (See **Exhibit 1, Attachment E** - relevant portions of Program Statement 5880.28.) Consistent with the statute and regulation, PS 5880.28 provides that in determining credit to be applied to the last year or portion of the last year, the 54 days of credit per year earned by the model prisoner shall be prorated to 0.148 days of credit for every actual day served during good behavior (54/365 = 0.148). Id.[6]

Under the Petitioner's interpretation of § 3624(b), he should get 54 days of GCT credit multiplied by his imposed sentence of 23 months, or 1.9 years, for a total of 102.6 days. (Petition, p. 5) Under his theory, he would receive credit for a portion of his sentence that, as a

---

3:03CV961, Dorsey, J., Ruling and Order dated Sept. 22, 2003 (D. Conn.) (unpublished decision); De Gerolamo v. White, Case No. 03CV139, Wolfson, F. Opinion Dated May 20, 2003 (D.N.J.) (unpublished decision); see also Montalvo v. United States, 174 F. Supp. 2d 10, 14 (S.D.N.Y. 2001).

Petitioner alleges that the BOP "explicitly and illegally instructs it [sic] personnel to simply ignore the sentence imposed by trial Judge [sic] . . . ." (Petition, p. 4.) As Petitioner does not cite any authority to support this assertion, it is unclear what Petitioner attempts to argue. The authority to determine issues related to the manner in which sentences are to be carried out, including the calculation of sentence credits, is vested with the BOP. See Herman v. Wendt, 2004 WL 68018, *2 (N.D. Tex. 2004); Pacheco-Camacho, 272 F.3d at 1270 (noting that BOP authority, though not explicit, is implied by the authority to grant GCT credits). As such, the BOP is not ignoring the sentence imposed by the trial judge, it is merely exercising its proper authority over such matters as the calculation of GCT credit.

[6] Petitioner never cites 28 C.F.R. § 523.20, the BOP regulation at issue in this case. The BOP Program Statement to which Petitioner cites (see Petition, p. 4) is merely an internal agency guideline which provides examples of how the proration mechanism of 28 C.F.R. § 523.20 is to be applied. Program Statement 5880.28 at 1-45 (1992). The Program Statement sets forth a mathematical model that is straight-forward in concept. It establishes a series of computations that adjust for the fact that each additional day of GCT credit results in one day less of time served. The days of credit and days of time served each need to be adjusted until the ratio of credit to time served (0.148) is proper. The calculations applicable to the Petitioner are set forth in **Attachment C** hereto. Program Statement 5880.28 does not purport to alter the BOP regulation in any way. In the instant case, Petitioner solely refers to the program statement (see Petition, p. 4), 'though only the regulation is significant and truly at issue. Therefore, Respondents do not address Program Statement 5880.28 in any great detail. See, e.g., Pacheco-Camacho v. Hood, 272 F.3d 1266, 1268 n.2 (9th Cir. 2001).

result of GCT credit, he is no longer required to serve. The Petitioner's theory is flatly inconsistent with the statutory requirement that credit be given "**at the end** of each year of the prisoner's term of imprisonment" (emphasis added), and that "credit for the last year or portion of a year of the term of imprisonment shall be prorated. . . ." Stated another way, if, as the Petitioner asserts, "term of imprisonment" were interpreted to mean "sentence imposed," it would be impossible for the BOP to give credit "at the end of each year of the prisoner's term of imprisonment," since the petitioner would, under his theory, no longer be under BOP custody. As a result of the awarded GCT credits, an inmate's sentence is reduced. Accordingly, it is logical for the BOP to calculate GCT based upon the number of years an inmate will in fact serve, rather than the sentence imposed.

The plain meaning of § 3624(b) supports the BOP's position. The statute sets forth the yearly occasion for the determination of each year's GCT credit: "at the end of each year of the prisoner's term of imprisonment." 18 U.S.C. § 3624(b). At that time, the BOP is to examine the prisoner's record of conduct over the year past and decide whether that prisoner has shown "exemplary compliance with institutional disciplinary regulations." 18 U.S.C. § 3624(b)(1). Thus, the GCT statute operates on a yearly, ongoing basis, as time is served, until the sentence is satisfied. It logically follows that if a prisoner cannot receive his 54 days of GCT until after each year of the term is complete, then he likewise cannot receive any GCT for time not actually served.

The statute also provides, "Credit that has not been earned may not later be granted." Thus, the language clearly indicates that GCT credit must be earned. Petitioner's interpretation runs afoul of the plain language of the statute. If GCT credit were awarded based on length of

sentence, as Petitioner urges, credit would be awarded for time not actually spent in prison, in other words, credit given that was never actually earned.

The statutory language is not ambiguous. But even if it were, the outcome would be the same because the BOP's interpretation of the statute is set forth in a duly promulgated regulation and thus, would be entitled to full deference under Chevron U.S.A. Inc. v. Natural Resources Defense Council, 467 U.S. 837 (1984). See Pacheco-Camacho v. Hood, 272 F.3d 1266, 1270 (9th Cir. 2001), cert. denied, 535 U.S. 1105 (2002). Under Chevron, the BOP's regulation is to be upheld if it is "based on a permissible construction of the statute." 467 U.S. at 843. The discussion above demonstrates that the BOP's interpretation meets this standard.

The only two circuit courts to have considered the issue raised here have upheld the BOP position. In Pacheco-Camacho, the Ninth Circuit rejected the same argument made by the Petitioner here. The court noted that the petitioner's argument in that case would "confer upon the prisoner a bonus during his last year of imprisonment." 272 F.3d at 1269. After examining the statutory language, the court concluded, "Nothing in the statute clearly suggests that Congress intended to give the prisoner such a windfall in his last year." Id. The court further concluded that the BOP's implementing regulation was entitled to Chevron deference and that it reflected a permissible interpretation of the statute. Id. at 1270-1271.[7]

The Court of Appeals for the Sixth Circuit, in two unpublished opinions, has also upheld the BOP's approach to determining GCT credits. See Brown v. Hemingway, 53 Fed. Appx. 338,

---

[7] Petitioner does not expressly assert a rule of lenity claim in his petition. To the extent that his petition, in arguing statutory ambiguity, is a rule of lenity claim in disguise, Respondents assert that this claim would also fail. The Pacheco-Camacho court rejected a claim that the rule of lenity compelled Petitioner's interpretation. The rule of lenity resolves ambiguities in a criminal defendant's favor; however, it does not apply when, as in this instance, the question has been addressed by a regulation validly adopted through the rulemaking process. 272 F.3d at 1271-72; Babbit v. Sweet Home Chapter of Cmtys., 515 U.S. 687, 704 n.18 (1995)

2002 WL 31845147 (6th Cir. 2002) ("The Bureau's interpretation is reasonable in light of the statutory language."); Williams v. Lamanna, 20 Fed. Appx. 360, 2001 WL 1136069 (6th Cir. 2001) ("The statute clearly states that good conduct time is awarded on time served by the inmate, not on the time that might potentially be served by the inmate.").[8]

The Petitioner seemingly attempts to rely on one case to the contrary, White v. Scibana, 2003 WL 23171593 (W.D. Wis. 2003).[9] (See Petition, p. 3.) Respondents suggest that the Scibana opinion is not well reasoned. The court in Scibana gives no consideration to the statutory language that credit be established "at the end of each year of the prisoner's term of imprisonment," and offers no analysis of how, under the Petitioner's theory, "credit for the last year or portion of a year . . . shall be prorated . . . ." The court in Scibana also fails to acknowledge the statutory command that "credit that has not been earned may not later be granted." Accordingly, Scibana should not be followed. The BOP's calculation of Petitioner's

---

[8] Several district court decisions are in accord. Martinez v. Wendt, 2003 WL 22456808 (N.D. Tex. 2003); Webb v. Deboo, et al., Case No. 3:03CV961, Dorsey, J., Ruling and Order dated Sept. 22, 2003 (D. Conn.); De Gerolamo v. White, Case No. 03CV139, Wolfson, F., Opinion Dated May 20, 2003 (D.N.J.); see also Montalvo v. United States, 174 F. Supp. 2d 10, 14 (S.D.N.Y. 2001).

[9] As a general matter, Petitioner cites little if any authority in his § 3624(b) argument. Therefore, it is unclear on what basis Petitioner seeks to support his argument. In his petition, he states: "two Circuit Court [sic] has [sic] already addressed this very issue and determined the phrase . . . "term of imprisonment" as [sic] being ambiguous . . . . See: [sic] Camacho [sic] v. Hood, 272 F.3d 1266, 1268-69 (9th Cir. 2001), also [sic] White v. Scibana, 03-C-581-C (7th Cir. [sic] 2004)." (Petition, p. 3.) Petitioner incorrectly attributes an ambiguity finding to Scibana, as well as improperly attributing Scibana to the Seventh Circuit, when in fact it is a case from the United States District Court for the Western District of Wisconsin. (Id.) See generally, Scibana, 2004 WL 877606 *1. The Scibana Court concluded that § 3624(b)'s "term of imprisonment" is **un**ambiguous. (Emphasis supplied.) Scibana, 2004 WL 877606 *1.
In the following paragraph of his petition however, he argues that § 3624(b) "is unambiguous." (Petition, p. 4). Petitioner does not cite any support for this statement though it appears to be drawn from Scibana. (Id.) The Scibana court held that the phrase "term of imprisonment," as used in § 3624(b), means "sentence imposed." 2004 WL 877606 at *2. In an attempt to strengthen this argument, Petitioner asserts that because Congress has used "term of imprisonment" as a synonym for "sentence" in other contexts, it must be interpreted to mean "sentence" in § 3624(b). This argument is undermined by United States v. Johnson, 529 U.S. 53 (2000). The Supreme Court recognized that the use of language in a particular statute or section does not require that the language be read in the same manner in another statute or section. 529 U.S. at 58-59 (holding that the language of § 3624(a) did not alter the natural reading of § 3624(e)); see also Pacheco-Camacho, 272 F.3d at 1271 (recognizing that although statutory terms should, whenever possible, be interpreted with the goal of intra-statutory consistency, nothing requires one particular interpretation on the basis of past uses).

GCT credit is correct, and the Petitioner's position without merit. Accordingly, substantial deference should be granted to the BOP's interpretation of § 3624(b). See Brissett v. Ashcroft, 363 F.3d 130, 133 (2d Cir. 2004) (citing Chevron, 467 U.S. at 843) (Substantial deference should be granted to an agency's interpretation of a statute that it is entrusted to administer.)[10]

II. **THE BOP PROPERLY APPLIED 18 U.S.C. § 3624(c) TO LIMIT THE PETITIONER'S ELIGIBILITY FOR PLACEMENT IN A CCC TO THE LAST TEN PERCENT OF HIS SENTENCE, NOT TO EXCEED SIX MONTHS**

Prior to December 2002, it was BOP policy to transfer prisoners to CCCs for periods of time exceeding the time limit specified in 18 U.S.C. § 3624(c). On December 13, 2002, the BOP Office of Legal Counsel ("OLC") issued an opinion concluding that the BOP's former practice regarding CCC placement was incorrect ("OLC Memorandum"). The new BOP procedure simply advises the public of the agency's corrected interpretation of the statute and conforms the BOP's actions with existing statutory law. As noted in the OLC Memorandum, the BOP's past CCC practice was an impermissible violation. (See id. at 7 n.6.) Hence, were the BOP to place a prisoner into community confinement pursuant to § 3624(c) for more than the last ten percent, or in excess of six months, of the prisoner's sentence, the BOP would be in violation of the plain language of the statute.

While Petitioner alleges that he is "qualified for six(6) months CCC [sic]" (Petition, p. 5), he does not develop any independent argument concerning the December 2002 change in policy. Rather, he merely string cites a number of district court opinions that have allegedly ruled that the change of policy is unlawful (see, e.g., Monahan v. Winn, 276 F.Supp.2d 196, 198 (D. Mass.

---

[10] To the extent that Petitioner believes he argued that judicial deference should not be given to the BOP Program Statement, Respondents assert that "some deference" may be granted to an internal BOP guideline. See Reno v. Koray, 515 U.S. 51 (1995). A high level of deference is due, however, when an agency, following the notice and comment procedures of the APA, issues a regulation, such as 28 C.F.R. § 523.20, which meets the Chevron two-pronged test. 467 U.S. 843-44.

2003),[11] without regard to whether the cases cited are inapplicable to, or distinguishable from, the instant case.[12]

---

[11] In support of his CCC transfer argument, Petitioner states that "[n]umerous courts across the country have found the B.O.P. policy to be legally invalid on a variety of grounds." (Petition, p. 5.) Petitioner then cites several cases including Iacaboni v. United States, 251 F. Supp. 2d 1015 (D. Mass. 2003) and Monahan v. Winn, 276 F. Supp. 2d 196, 204 (D. Mass. 2003). Id. The "variety of grounds" to which Petitioner refers include improper adoption in violation of the APA and violations of the Ex Post Facto and Due Process clauses of the United States Constitution. See, e.g., Iacaboni, 251 F. Supp. 2d at 1017-18. Petitioner, however, fails to argue any of those grounds. Therefore, to the extent Petitioner believes his string citation asserts those arguments, Respondents contend that those arguments should be deemed waived (see f.n. 12, infra), and must fail.

First, any claim that the BOP policy violates the APA is without merit. Section 553 of the APA requires agencies to promulgate new rules subject to a period of notice and comment. 5 U.S.C. § 553. The notice and comment provisions apply only to substantive or legislative rules; they do not apply to "interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice." Lincoln v. Vigil, 508 U.S. 182, 196 (1993) (citing 5 U.S.C. § 553 (b)). Whereas, legislative rules create obligations not already outlined in the general statute, Warder v. Shalala, 149 F.3d 73, 80 (1st Cir. 1998), interpretive rules "advise the public" on the agency's interpretation of the statutes and rules it administers. Shalala v. Guernsey Memorial Hospital, 514 U.S. 87, 99-100 (1995). Several courts have deemed similar BOP program statements "interpretive," and therefore, not subject to notice and comment. See, e.g., Koray, 515 U.S. at 60-61.

Second, any claim that the BOP policy violates the Constitution is flawed. Several of the cases cited implicated the Ex Post Facto clause. See, e.g., Iacaboni, 251 F. Supp. 2d at 1041. A legislative action violates the Ex Post Facto clause when it creates a crime that did not exist at the time of punishment or increases the punishment of an already established crime. See Garner v. Jones, 529 U.S. 244, 249-50 (2000); Lynce v. Mathis, 519 U.S. 433, 441 (1997). The new BOP policy did not violate the Ex Post Facto clause as it did not alter § 3624(c), it merely corrected a previously erroneous interpretation. The Ex Post Facto clause does not forbid correction of a misinterpretation of an existing statute even if the correction would serve to disadvantage one who relies on the misinterpretation. Stephens v. Thomas, 19 F.3d 498, 500 (10th Cir. 1994); cert. denied, 513 U.S. 1002 (1994). Further, in the instant case, Petitioner's actual sentence was not changed. Others cases implicated the Due Process clause. See, e.g., Monahan, 276 F. Supp. 2d at 220. The BOP policy does not violate due process. Under a due process analysis a petitioner must demonstrate that he has a cognizable liberty interest in his CCC placement. It is, however, well established that federal prisoners do not have a protected liberty interest in CCC placement. U.S. v. Laughlin, 933 F.2d 786 (9th Cir. 1991); U.S. v. Morales-Morales, 985 F. Supp. 229, 230-31 (D.P.R. 1997). In the instant case, the BOP's interpretation does not offend due process because, a previously demonstrated, the plain language of 18 U.S.C. § 3624(c) compels, and the legislative history confirms, the conclusion that a prisoner is not eligible for placement in a CCC until the last ten percent of his sentence. See supra, Part II(B)(1), (2). Therefore, the interpretation is not "unexpected and indefensible by reference to the law which had been expressed prior to the conduct at issue," and accords fair warning. Rogers v. Tennessee, 532 U.S. 451, 457-58 (2001).

[12] Inasmuch as Petitioner failed to develop these claims, the Court must deem them waived. "A fundamental purpose of pleadings under the Federal Rules of Civil Procedure is to afford the opposing party fair notice of the claims asserted against him and the grounds on which those claims rest." Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1171 (1st Cir. 1995). "The bottom line is simply this: while courts should construe pleadings generously, paying more attention to substance than to form, they must always exhibit awareness of the defendant's inalienable right to know in advance the nature of the cause of action being asserted against him." Id. Petitioner, makes only **passing mention** to "a variety of grounds," followed by a string citation which in no way references any claimed violation of the Administrative Procedure Act ("APA"), the Ex Post Facto Clause of the United States Constitution, or the Due Process Clause. Therefore, Petitioner failed to provide Respondent with fair and adequate notice of these claims and the grounds for such, and the Court must dismiss these claims.

In analogous situations, the First Circuit has repeatedly found that issues addressed or mentioned in an appellant's brief without in-depth argument or development must be deemed waived. "It is settled in this circuit that issues adverted to on appeal in a perfunctory manner, unaccompanied by some developed argumentation, are deemed

At the outset, Respondents note that other courts have upheld the validity of the BOP policy. Cohn v. Federal Bureau of Prisons, 302 F. Supp. 2d 267 (S.D.N.Y. 2004); Benton v. Ashcroft, 273 F. Supp. 2d 1139 (S.D. Cal. 2003), appeal docketed, 9th Cir. No. 03-56343. Most of the courts that have ruled against the government have done so in the context of so-called "front end" cases, where the policy has been applied to prohibit placement in a CCC at the outset of the prisoner's sentence. In contrast, a number of courts have upheld the policy as applied to the "back end" situation, such as that presented here, where the Petitioner seeks to increase the period of his CCC placement at the tail end of his sentence. See Kennedy v. Winn, 2003 WL 23150108 (D. Mass. July 9, 2003) (Lasker, J.); Paul v. Winn, 04-CV-40037-RCL (Lindsay, J.) (D. Mass. July 29, 2004); Messere v. Winn, 03-CV-40279-EFH (Harrington, J.) (D. Mass. Feb. 10, 2004); Turano v. Winn, 03-CV-40188-EFH (Harrington, J.) (D. Mass. Jan. 7, 2004); Goldings v. Winn, et al., 03-CV-40161-WGY (Young, Ch. J.) (D. Mass. Oct. 23, 2003) (Appeal docketed, No. 03-2633, oral argument held May 7, 2004); Rothberg v. Winn, 03-CV-11308-RGS (Stearns, J.) (D. Mass. Oct. 10, 2003).

> A. **A Plain Reading of § 3624(c) Evinces An Intent To Impose a Temporal Limit on CCC Placement**

Section 3624(c) indisputably sets a limit on the amount of time that a prisoner may be placed in a CCC. The section reads, ". . . a reasonable part, not to exceed six months, **of the last 10 per centum of the term to be served** . . . ." Petitioner is serving a 23-month sentence, therefore, ten percent of the term to be served would be approximately two months.

---

to have been abandoned." Ryan v. Royal Ins. Co. of Am., 916 F.2d 731, 734 (1st Cir. 1990). Petitioner does not, however, present developed arguments or reasoning for any of his issues. See Conto v. Concord Hospital, Inc., 265 F.3d 79, 81-82 (1st Cir. 2001); In re Three Additional Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litigation, 93 F.3d 1, 3 n.2 (1st Cir. 1996); Gamma Audio & Video, Inc. v. Ean-Chea, 11 F.3d 1106, 1113 (1st Cir. 1993).

Accordingly, Petitioner was awarded two months in a CCC which is to commence on August 3, 2004.

Petitioner does not argue a different interpretation of § 3624(c). Instead, he contends that § 3624(c) is subject to a broader authority granted by 18 U.S.C. § 3621(b). This contention is in conflict with two recent decisions. See Doran v. Olson, No. 2:04-cv-134-LJM-WTL (McKinney, J.) (S.D. Ind. July 19, 2004) (unpublished opinion); Pointer v. Olson, No. 2:04-cv-137-LJM-WTL (McKinney, J.) (S.D. Ind. July 19, 2004) (unpublished opinion) (both holding that authority to engage in CCC placement derives solely from § 3624(c), therefore, the BOP is subject to the temporal limitations set forth in § 3624(c)); see also Toliver v. Norwood, Civil Action No. 04-RB-0739 (CBS) (Blackburn, J.) (D. Co. July 16, 2004) (unpublished opinion) (disagreeing with the argument that the two statutes must be read together).

Section 3621(b) grants the BOP exclusive authority to "designate the place of the prisoner's imprisonment." It further provides that the BOP "may designate any available penal or correctional facility that meets the minimum standards of health and habitability established by the Bureau . . . that the Bureau determines to be appropriate and suitable, considering . . . [five specified factors]." Basic rules of statutory construction do not permit Petitioner's argument. It is well settled that a provision of a statute will not be read in a manner that renders another provision of the same statute superfluous. See, e.g. Kawaauhau v. Geiger, 523 U.S. 57, 62 (1998). Section 3624(c) cannot place a temporal limit on CCC placement while § 3621(b) allows placement in a CCC at anytime. Petitioner's interpretation of § 3621(b) would effectively nullify § 3624(c). Additionally, "it is a basic principle of statutory construction that a specific statute . . . controls over a general provision . . . ." HCSC-Laundry v. United States, 450 U.S. 1, 6 (1981). Section 3624(c) is very specific regarding CCC placement, while § 3621(b), is

general.

The OLC Memorandum also interprets the plain meaning of the statute. While the majority of the memorandum concentrates on § 3621(b), which addresses the BOP's use of community confinement at the **outset** of a sentence, § 3624(c) is addressed in a footnote:

> Your office has advised us that BOP, in exercising its authority under section 3624(c), has sometimes not abided by the time limitation set forth in that section. The authority conferred under section 3624(c) to transfer a prisoner to a non-prison site is **clearly limited** to a period "not to exceed six months, of the last 10 per centum of the term to be served," 18 U.S.C. § 3624, and we see no basis for disregarding this time limitation.

(OLC Memorandum, p. 7 n.6 (emphasis added).) This statement is in keeping with both the plain language and the legislative history of section 3624(c).

### B. The Legislative History Supports the BOP's Position

The legislative history of § 3624(c) further bolsters the mandatory nature of the time limits set for community confinement. In 1990, the House and Senate considered the Crime Control Act of 1990.[13] The bill would have eliminated the temporal limit of pre-release custody as outlined in § 3624(c) (six months or ten percent of the sentence, whichever is shorter), and would have authorized the BOP to place prisoners in community or home confinement for longer periods.

The expansion of BOP authority was met with opposition. During ensuing floor debate on H.R. 5269, Representative McCollum offered an amendment that would restore the existing limits on BOP discretion regarding community confinement. Representative McCollum further modified the statute by adding a sentence indicating that home confinement was a permissible option for the ten percent transition phase of a prisoner's sentence. He explained his amendment

---

[13] Pub. L. No. 101-647, reprinted in 1990 U.S.C.C.A.N. 4789, 4913.

stating:

> The reason I am offering this amendment is because in the language of the bill as it is now out here before us, there has been a concern I have had for some time that we are giving a whole lot more authority to the Bureau of Prisons than we really ought to. . . . The language of the bill, without being amended, would have effectively allowed the Director of the Bureau of Prisons to release any prisoner for any length of time under home custody or whatever, so they would not have had to have served a day in prison.

136 Cong. Rec. 27,587-88 (1990). The House approved the amendment. Id. at 27,588. The provisions of H.R. No. 5269 pertaining to CCCs, including Representative McCollum's amendment, were incorporated into the final bill that was enacted. See S.3266 (101st Cong. 1990); 136 Cong. Rec. 36930 (1990) (passage in the House); 136 Cong. Rec. 36318 (passage in the Senate). Thus, legislative history supports the mandatory nature of the temporal limit imposed by § 3624(c).

### C. Recent Case Law Supports the BOP's Interpretation

Six recent decisions in this District Court on the same point raised here, the propriety of transfer to a CCC for the last six months of a sentence when that exceeds ten percent of the sentence, support the application of the plain language and meaning of § 3624(c).[14] In Kennedy v. Winn, the petitioner, who had been sentenced to 21 months in prison, sought relief in federal district court seeking to be placed in a CCC six months prior to his release date. 2003 WL 23150108, at *1. In the Kennedy case, Judge Lasker found that § 3624(c) was controlling. Id. The court held that to set the petitioner's halfway house transfer date six months prior to the end

---

[14] See Kennedy v. Winn, 2003 WL 23150108 (D. Mass. July 9, 2003) (Lasker, J.) (unpublished opinion); Paul v. Winn, 04-CV-40037-RCL (D. Mass. July 29, 2004) (Lindsay, J.) (unpublished opinion); Messere v. Winn, 03-CV-40279-EFH (Harrington, J.) (D. Mass. Feb. 10, 2004) (unpublished opinion); Turano v. Winn, 03-CV-40188-EFH (Harrington, J.) (D. Mass. Jan. 7, 2004) (unpublished opinion); Goldings v. Winn, et al., 03-CV-40161-WGY (Young, J.) (D. Mass. Oct. 23, 2003) (Appeal docketed, No. 03-2633, oral argument held May 7, 2004) (unpublished opinion); Rothberg v. Winn, 03-CV-11308-RGS (Stearns, J.) (D. Mass. Oct. 10, 2003) (unpublished opinion).

of his sentence would have exceeded the maximum ten percent period of community confinement, a violation of the plain language of § 3624(c). Id. at *2.

An opinion by Judge Stearns in Rothberg v. Winn, reinforces that the current BOP interpretation of § 3624(c) is correct. 03-CV-11308-RGS (Stearns, J.) (D. Mass. Oct. 10, 2003). The petitioner in Rothberg was also challenging the timing of his CCC placement. Id. In dismissing the petition, Judge Stearns also found that § 3624(c) is controlling, and further stated that the BOP's prior interpretation was a mistake. Id. at 2. Accord, United States v. Mikutowicz, 2003 WL 21857885 (D. Mass. Aug. 6, 2003) (Zobel, J.).

A more recent opinion by Chief Judge Young, in Goldings v. Winn, et al., adopted the Rothberg and Kennedy courts' interpretation of § 3624(c). 03-CV-40161-WGY (Young, Ch. J.) (D. Mass. Oct. 23, 2003) (Appeal docketed, No. 03-2633, oral argument held May 7, 2004). In dismissing the petitioner's complaint, Chief Judge Young found that the BOP simply corrected a previously erroneous interpretation of § 3624(c) and, therefore, there was no constitutional or statutory violation. Id. at 2. Finally, this decision was expressly followed in dismissing the actions of Turano v. Winn, 03-CV-40188-EFH (D. Mass. Jan. 7, 2004), and Messere v. Winn, 03-CV-40279-EFH (Harrington, J.) (D. Mass. Feb. 10, 2004).

Finally, on the date of the filing of this (i.e., Respondents') dispositive motion, Judge Lindsay issued his ruling in Paul v. Winn, concluding that the BOP's "change of policy in December of 2002 was entirely appropriate and legal." Id. at 4. In dismissing Petitioner's complaint, the Paul court cited and expressly followed all five of its predecessors in this district court with respect to the meaning of § 3624(c).

In contrast to these decisions, Petitioner asserts that CCCs are equivalent to any penal or correctional facility, thus attempting to implicate § 3621(b), citing to Monahan v. Winn,

16

276 F. Supp. 2d 196 (D. Mass. 2003), and other similarly decided cases.  However, the instant action involves the issue of whether it is correct to allow a prisoner to serve more than ten percent of the **end of the sentence** in a halfway house, thus contravening the plain language of § 3624(c).  Thus, Petitioner's action is identical to Kennedy, Paul, Rothberg, Goldings, Turano, and Messere, and should be dismissed.[15]

The plain language of the statute, its legislative history, and the well-established case law all demonstrate that § 3624(c) is controlling, and that the BOP correctly applied the law.  Therefore, in this action, if the BOP would have released the Petitioner into community confinement in April 2004, as requested by Petitioner, it would have been in direct violation of § 3624(c).  The BOP's calculation of Petitioner's release date to a CCC, August 3, 2004, is in accordance with the OLC Memorandum and § 3624(c).  Thus, Petitioner's claim should be dismissed.

---

[15]   Respondents respectfully suggest that, contrary to the Court's view in Monahan, the history of § 3621(b) demonstrates that Congress did not establish a broad discretion in the BOP to place a prisoner in a CCC at any time during the prisoner's term of imprisonment.  Prior to the Sentencing Reform Act of 1984, 18 U.S.C. § 4082(b), the predecessor to § 3621(b) clearly gave the Attorney General broad authority to place a prisoner in a CCC.  It provided in part that the Attorney General "may designate as a place of confinement any available, suitable, and appropriate institution or facility . . . ." 18 U.S.C. § 4082(b) (1982).  Subsection (f) of § 4082 provided, "[a]s used in this section – the term 'facility' shall include a residential community treatment center."  But when the law was re-written in 1984, Congress did three things to change this regime.  First, it added the modifying words "penal or correctional," so that now the BOP, under this new § 3621(b), "may designate any available **penal or correctional** facility . . . ." (emphasis added).  Second, Congress stripped the definition of "facility" from the new § 3621.  Third, a new section, 3624(c), was added to create an express, but carefully circumscribed authority in the BOP to place a prisoner in a CCC for the last ten percent, not to exceed six months, of the prisoner's term of imprisonment.  The only possible explanation for these statutory changes is that Congress intended to modify the BOP's traditional authority by limiting the authority to place a prisoner in a CCC.

This conclusion is also consistent with the larger scheme of the Sentencing Reform Act.  Placement of an offender in a CCC is expressly authorized as a condition of probation.  18 U.S.C. § 3563 (b).  It is also authorized as a condition of supervised release.  See United States v. Bahe, 201 F.3d 1124, 1129 (9th Cir. 2000).  It is **not** authorized as a permissible part of a term of imprisonment.  See 18 U.S.C. §§ 3581, 3582.  Moreover, the U.S. Sentencing Guidelines, which are a congressionally-authorized implementation of the Sentencing Reform Act and thus entitled to substantial deference, parallel this scheme.  The Sentencing Guidelines clearly indicate that "imprisonment" does not include placement in a CCC.  See United States v. Cintrón-Fernández, 356 F.3d 340, 348 (1st Cir. 2004).  Accordingly, Petitioner's assertion that § 3621(b) authorizes placement in a CCC for longer than the period prescribed by § 3624(c) is incorrect.

## Conclusion

For the foregoing reasons, Respondents respectfully request that this Court allow their motion to dismiss in its entirety pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

Respectfully submitted,

RESPONDENTS

DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF PRISONS,

HARLEY LAPPEN, DIRECTOR,
and

DAVID L. WINN, WARDEN

By their attorney,

MICHAEL J. SULLIVAN
United States Attorney

By:  /s/ Gina Y. Walcott-Torres
Gina Y. Walcott-Torres
Assistant U.S. Attorney
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3100

Dated: July 29, 2004

## CERTIFICATE OF SERVICE

This is to certify that I have this 29th day of July 2004, served upon the person listed below a copy of the foregoing document by depositing in the United States mail a copy of same in an envelope bearing sufficient postage for delivery:

D. Ricky Richardson (#17761-038), *pro se*, P.O. Box 879, Ayer, MA 01432

/s/ Gina Y. Walcott-Torres
Gina Y. Walcott-Torres
Assistant United States Attorney

**REQUEST FOR WAIVER OF LOCAL RULE 7.1(A)(2) CERTIFICATION**

     The undersigned counsel hereby requests a waiver of the requirements of Local Rule 7.1(A)(2). As reasons therefore, she asserts that the Petitioner, who is acting *pro se*, is incarcerated at the Federal Medical Center in Devens, Massachusetts.

/s/ Gina Y. Walcott-Torres
Gina Y. Walcott-Torres
Assistant United States Attorney